UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STACEY MONTGOMERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17 CV 1207 CDP |
| | ) | |
| NANCY A. BERRYHILL, Deputy Commissioner of Operations for Social Security,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Stacey Montgomery brings this action under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's final decision denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* I will reverse the decision and remand the matter to the Commissioner for further proceedings.

## **Procedural History**

On April 3, 2014, the Social Security Administration denied Montgomery's December 2013 application for SSI in which she claimed she became disabled on March 15, 2002, because of post-traumatic stress disorder (PTSD), anxiety, and

---

[1] Nancy A. Berryhill's term as Acting Commissioner of Social Security expired in November 2017. She continues to lead the agency as Deputy Commissioner of Operations.

palpitations.[2] Montgomery later amended her alleged onset date to October 11, 2013. At Montgomery's request, a hearing was held before an administrative law judge (ALJ) on December 7, 2015, at which Montgomery and a vocational expert testified. A medical expert later responded to written interrogatories put to him by the ALJ. On April 7, 2016, the ALJ denied Montgomery's claim for benefits, finding the vocational expert's testimony to support a finding that Montgomery could perform work as it exists in significant numbers in the national economy. On March 6, 2017, the Appeals Council denied Montgomery's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Montgomery contends that the ALJ legally erred by failing to submit to the medical expert questions proffered by her, which she alleges violated the Commissioner's policy on post-hearing interrogatory evidence and deprived her of her due process right to confront witnesses. Montgomery also claims that the ALJ's decision is not supported by substantial evidence because she substituted her own opinion for the medical evidence of record and, further, mischaracterized and improperly relied on vocational expert testimony that was based on an incomplete hypothetical question. Montgomery asks that I reverse the Commissioner's final decision and remand the matter for

---

[2] Montgomery also filed an application for disability insurance benefits under Title II of the Act but later withdrew that application. (Tr. 138-44, 165.)

additional proceedings. For the following reasons, I will remand the matter to the Commissioner for further consideration.

**Medical Records and Other Evidence Before the ALJ**

Montgomery applied for SSI in December 2013, when she was forty years old. She had recently begun medication therapy and psychological counseling to treat her fear of leaving her home; she believed that the world was too dangerous, and she was afraid that something bad would happen to her if she left her home. Although she exhibited symptoms of anxiety and depression since at least 2011[3] and was treated intermittently with medication for the conditions, she was diagnosed with chronic PTSD in October 2013 and thereafter received regular treatment, including cognitive behavioral therapy and interpersonal therapy.[4] In 2015, after two years of treatment, Montgomery continued to be too afraid to leave her home; she traveled to the grocery store, church, and to doctor's appointments only when accompanied by a friend or family member.

With respect to the medical records and other evidence of record relevant to the issues raised by Montgomery in this action, I adopt Montgomery's recitation of facts set forth in her Statement of Uncontroverted Material Facts (ECF #16-1) to

---

[3] Fear and anxiety are also noted in emergency room notes dating back to 2005. (*See, e.g.*, Tr. 519, 561, 601.)

[4] Traumatic life events noted in the medical record include several car accidents, rape at age fourteen, domestic violence, and robbery at gunpoint when she worked as a cashier.

the extent they are admitted by the Commissioner (ECF #21-1). These admitted facts provide a fair and accurate description of the relevant record before the Court.

Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A.  Legal Standard

To be eligible for SSI under the Social Security Act, Montgomery must prove that she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S.

137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial

evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.  ALJ's Decision

In her written decision here, the ALJ found that Montgomery last met the insured status requirements of the Social Security Act on December 30, 2005, and had not engaged in substantial gainful activity since October 11, 2013, the alleged onset date of disability. The ALJ found Montgomery's anxiety and PTSD to be severe impairments, but determined that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12.) The ALJ found that Montgomery had the RFC to perform a full range of work at all exertional levels but could have "no direct interaction with the public, no work as a cashier, no work in desolate places, and no more than occasional changes in the

work setting." (Tr. 14.) The ALJ found that Montgomery had no past relevant work. (Tr. 18.)

Considering Montgomery's RFC and her age, education, and work experience, the ALJ found vocational expert testimony to support a conclusion that Montgomery could perform other work as it exists in significant numbers in the national economy, and specifically as a housekeeper, hand packer, and production assembler. The ALJ therefore found Montgomery not to be disabled at any time from October 11, 2013, through the date of the decision. (Tr. 18-19.)

C. <u>Denial of Due Process in Failing to Propound Interrogatories to Medical Expert</u>

As noted above, the ALJ held a hearing on December 7, 2015, at which Montgomery and a vocational expert testified in response to questions posed by the ALJ and counsel. In a letter to counsel dated February 22, 2016, the ALJ reported that she had secured post-hearing opinion evidence from Joseph Carver, Ph.D., a medical expert, by way of written interrogatories. The ALJ advised counsel that, in response to this post-hearing evidence, Montgomery had "a right" to submit "written comments concerning the evidence" and/or "written questions to be sent to the author(s) of the new evidence." (Tr. 251.) Counsel thereafter proffered additional interrogatories for the ALJ to submit to Dr. Carver, stating that she would provide comments upon his response. (Tr. 254.) The ALJ, however, did not submit these questions to Dr. Carver. Nor did she inform counsel that she

would not do so. Instead, the ALJ wrote in her final decision that she was denying Montgomery's request for additional interrogatories because Dr. Carver's responses "adequately address all of the issues contained therein." (Tr. 17.) Notably, the ALJ gave great weight to Dr. Carver's opinion in denying Montgomery's claim for benefits. (Tr. 16.)

In the circumstances of this case, the ALJ's failure to submit Montgomery's proffered interrogatories to Dr. Carver and the resulting failure to allow Montgomery to comment upon the post-hearing medical opinion deprived Montgomery of due process.

As an initial matter, I note that Montgomery argues that the ALJ violated the Commissioner's own policies and procedures governing the receipt of post-hearing evidence from medical experts as set out in HALLEX I-2-7-30 and HALLEX I-2-5-44.[5] As repeatedly observed by the courts in this district, however, HALLEX does not have the force of law in the Eighth Circuit. *See Ellis v. Astrue*, No. 4:07CV1031 AGF, 2008 WL 4449452, at *15-16 (E.D. Mo. Sept. 25, 2008). *See also, e.g., Hopper v. Berryhill*, No. 4:16 CV 1309 JMB, 2017 WL 4236974, at *12 (E.D. Mo. Sept. 25, 2017); *Renshaw v. Berryhill*, No. 4:16-CV-1467 NAB, 2017 WL 4176437, at *4 (E.D. Mo. Sept. 21, 2017); *Medvrich v. Colvin*, No. 4:13 CV 1466 DDN, 2015 WL 58925, at *4 (E.D. Mo. Jan. 5, 2015). Accordingly, the

---

[5] Hearings, Appeals, and Litigation Law (HALLEX) manual.

ALJ's alleged failure to follow the Commissioner's internal manual is not itself a basis for remand. Montgomery further argues, however, that the ALJ's failure to permit her to question Dr. Carver nevertheless violated her right to due process. In the circumstances of this case, I agree.

While disability claimants have a procedural due process right to a full and fair hearing, their right to cross-examine witnesses or those who submit reports is not absolute given the non-adversarial nature of the social security process. *Passmore v. Astrue*, 533 F.3d 658 (8th Cir. 2008). The Commissioner argues that the ALJ was therefore not required to permit Montgomery to question Dr. Carver, and properly exercised her discretion to deny Montgomery's request to submit questions given that the evidence of record was sufficient to determine Montgomery's claim.

In her letter to counsel, the ALJ advised that Montgomery had a "right" to submit interrogatories and to comment on Dr. Carver's responses. At this invitation, Montgomery indeed submitted additional interrogatories and advised the ALJ that she intended to comment on the responses when made. But without the interrogatories being sent, or at least being informed of this circumstance, Montgomery was deprived of the opportunity to at least comment on Dr. Carver's responses to the ALJ's own questions. The ALJ simply ignored Montgomery's request until she denied it in the final decision.

As her reason to deny Montgomery's request, the ALJ wrote that the responses given by Dr. Carver to the ALJ's own questions "adequately address all of the issues" raised by Montgomery's proffered questions. But they did not. Unlike the ALJ's questions, Montgomery's inquired as to how often her psychologically-based symptoms would cause her to miss full days of work and/or cause her to be late for work. (*Compare* Tr. 1188-94 *with* Tr. 256-57.) None of Dr. Carver's responses to the ALJ's questions address this issue. Questions regarding absenteeism are directly relevant to determining Montgomery's ability to function full-time in the workplace, especially considering the substantial evidence of record that Montgomery's medically determinable mental impairments of chronic PTSD and anxiety continued to prevent her from independently leaving her home even after years of treatment, as well as the vocational expert's hearing testimony that a person could not maintain employment if they had six work-absences in a year or one absence in a thirty-day period within consecutive months. (*See* Tr. 55.) By refusing to submit Montgomery's additional interrogatories to Dr. Carver, the ALJ denied Montgomery the opportunity to confront the evidence against her and to have a full and fair hearing on her claims.

I also find it significant that the ALJ accorded great weight to Dr. Carver's post-hearing opinion without giving Montgomery the opportunity to question him regarding relevant medical evidence or at least to comment on the opinion already

given. Given the proffered interrogatories' relevance and probative value, I cannot say that the ALJ's failure to propound them was harmless. *Cf. Hopper*, 2017 WL 4236974, at *13.

On this record, Montgomery's interrogatories to Dr. Carver were reasonably necessary to the full development of her case. The use of Dr. Carver's opinion as primary evidence upon which to deny benefits without providing Montgomery the opportunity to cross-examine or comment violated Montgomery's right to due process. I will therefore remand the case so that the ALJ may submit the proffered interrogatories to a medical expert, obtain Montgomery's comments on this post-hearing evidence, and conduct further proceedings as necessary. To the extent Montgomery argues that the ALJ misconstrued Dr. Carver's opinion regarding her need for a travel partner, Montgomery can address this argument on remand.

D.      Incomplete Review of Record / Substitution of Opinion

After finding at Step 3 of the sequential analysis that Montgomery's impairments did not meet the criteria for listing level disability, the ALJ determined Montgomery's credibility and assessed her RFC. In discrediting Montgomery's complaints, however, the ALJ misapprehended significant evidence and improperly substituted her own opinion for the medical evidence of record.

As noted above, Montgomery showed signs and symptoms of anxiety and depression since at least 2011 and received intermittent treatment therefor from

general practitioners at Family Care Health Center. In September 2013, Dr. Payal Patel from Family Care referred Montgomery to Behavioral Health for evaluation and counseling when she observed that Montgomery's phobias associated with her generalized anxiety disorder rendered her unwilling to take medication.[6] Dr. Patel questioned whether Montgomery suffered from PTSD versus generalized anxiety. (Tr. 741-43.) Upon undergoing evaluation at Behavioral Health in October 2013, Montgomery was diagnosed with chronic PTSD and anxiety and began receiving regular and consistent treatment with mental health care providers, which continued through at least August 2015.

In her decision, the ALJ acknowledged Montgomery's claim that her history of being robbed at gunpoint while working as a cashier and of being involved in a car accident made her scared to work and afraid of driving and being in a car. The ALJ found it "troublesome," however, that Montgomery also testified at the hearing that she had been raped, but that she never mentioned this event during her therapy sessions. (Tr. 14-15, 18.) The ALJ found that this inconsistency appeared to be an "exaggeration to obtain disability benefits." (Tr. 18.) The ALJ also found that, despite Montgomery's claim that she cannot work because of her fear to leave home, her therapy sessions focused on her relationship issues and not on issues that

---

[6] Montgomery reported on several occasions that she was concerned about medication side effects, that she wanted to research certain medications before taking them, and that she was unsure and skeptical about their effectiveness. (*See, e.g.*, Tr. 649, 652-53, 661, 669, 673, 682, 687, 691, 743, 941, 1050.)

- 12 -

prevented her from working. (Tr. 15, 17.) These factual findings are belied by the record.

First, contrary to the ALJ's finding that Montgomery never mentioned rape as a basis of her anxiety during treatment, the record shows that her treating mental health provider made the following observation in September 2014:

> Stacey discussed how she wants and needs a job, but feels like she cannot because of difficulty leaving the house. She reported when she is alone men often follow her, which makes her feel uncomfortable. We discussed how her past histories of being raped and also being held at gunpoint have contributed to this fear. She reported that she has a desire to "move on" from these experiences.

(Tr. 1101.) Also, during an earlier visit to Family Care Health Center in April 2012, Montgomery reported to Dr. Khannia Thomas that she experienced anxiety symptoms of shaking, racing heart, shortness of breath, and dry mouth; that she had a history of traumatic events, including several car accidents, rape at age fourteen, and domestic violence; and that she was afraid of driving for fear of having an accident, and afraid when alone at home for fear of someone breaking in. (Tr. 764-68.) On this record, for the ALJ to say that Montgomery's hearing testimony that she was raped appeared to be an exaggeration in order to obtain benefits is itself troublesome, to say the least.

In addition, the ALJ's finding that Montgomery's therapy sessions did not focus on her fear of leaving her home is contrary to the record evidence. While the ALJ is correct that interpersonal relationships were discussed during many of these

- 13 -

sessions, the record shows that over half of the thirty sessions with mental health professionals primarily addressed Montgomery's fears stemming from past traumatic events, how these fears cause her to believe that the world and the people in it are dangerous, how she is afraid to leave her home because of the dangerousness of the world, and how she would like to work but is too afraid to leave her home. Therapeutic and coping strategies were discussed during all of these sessions in an effort to assist Montgomery in overcoming these fears. While many of Montgomery's therapy sessions also included discussions involving interpersonal relationships, the nature of several of these discussions involved Montgomery's fear for her family members' safety as well as how her anxiety affects her relationships. The ALJ's statements that Montgomery's therapy did not focus on issues that kept her from working appear to be based on a myopic view of the record. These discrepancies between the ALJ's findings and the actual evidence of record undermine the ALJ's ultimate conclusion of non-disability. *See Baumgarten v. Chater*, 75 F.3d 366, 368-69 (8th Cir. 1996).

Finally, with her statement that she "believe[d] that, if she worked on it, the claimant could make progress in going out on her own" (Tr. 17), the ALJ appeared to improperly draw her own inferences from the medical evidence to conclude that Montgomery's participation in treatment should render her able to work. Not only does this statement disregard the efforts made during Montgomery's two-year,

- 14 -

biweekly therapy sessions to devise strategies to overcome her fear of leaving home but it also ignores her treating mental health professional's August 2015 opinion that "[m]any of Stacey's behaviors are deep-rooted" and that referral to long-term therapy may be necessary to provide benefit to Montgomery. (Tr. 1029.) It is well established that an ALJ may not "play doctor" and draw upon her own inferences from medical reports to make her own independent medical findings. *Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009 ); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000); *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996). Nothing in the record shows that Montgomery was not pursuing a valid course of treatment, and no treating provider questioned the severity of her impairment. *See Tate v. Apfel*, 167 F.3d 1191, 1197-98 (8th Cir. 1999). That this treatment had so far been unsuccessful in resolving Montgomery's debilitating fear does not mean that Montgomery did not "work on it." To deny a claimant disability because she "is not acting under a 'reasonable fear' mocks the idea of disability based on mental impairments." *Pate-Fires*, 564 F.3d at 947 (internal quotation marks and citation omitted).

E.  Reliance on Vocational Expert Testimony

As set out above, the ALJ failed to properly consider all the evidence of record regarding Montgomery's mental impairment. Accordingly, her RFC assessment is called into question because it may not include all of Montgomery's

limitations. *See Holmstrom v. Massanari*, 270 F.3d 715, 722 (8th Cir. 2001); *Pate-Fires*, 564 F.3d at 944-45 (ALJ's failure to properly evaluate evidence of mental impairment resulted in RFC not supported by substantial evidence). And where a hypothetical question posed to a vocational expert is based on an RFC that does not contain all of a claimant's limitations, the response given to that hypothetical cannot constitute substantial evidence to support an ALJ's decision to deny benefits. *Jones v. Astrue*, 619 F.3d 963, 972 (8th Cir. 2010). Accordingly, I cannot say that the vocational expert's testimony here constituted substantial evidence to support the ALJ's decision.

Moreover, the manner by which the ALJ relied on the vocational expert's testimony in the circumstances of this case requires remand. At the hearing, the ALJ asked the vocational expert to consider a person of Montgomery's age, education, and work experience and to assume no physical limitations, but that the person was "limited to work with no more than occasional changes in the work setting, work that involves no direct interaction with the public, only occasional interaction with coworkers, with no tandem tasks, and occasional interaction with supervisors." (Tr. 54.) The vocational expert responded that such a person could perform work as a housekeeper and hand packer. (*Id.*) The ALJ and the expert then had the following exchange:

> Q. [ALJ]   If I further limit it to not being – not going to desolate places like you might with housekeeping to hotel rooms, or offices

>that are empty, if I would put that further restriction in, no desolate places, would that impact your answer?

A. [VE]   I'm not sure that housekeeping would be considered a desolate environment. Do you mean working alone, or –

Q.   Well, working in a place where – like, for example, in a hotel room, you know, where somebody could be hiding in the closet, or in the bathroom, or something like that, or, I guess –

A.   So a more open work environment.

Q.   Yes, yes, less – yes, less contained, I guess, would be a little better.

(Tr. 54-55.) The vocational expert testified that such a person could perform work as a production worker/assembler. (Tr. 55.)

In her written decision, the ALJ found that Montgomery's RFC limited her to "no direct interaction with the public, no work as a cashier, no work in desolate places, and no more than occasional changes in the work setting." (Tr. 14.) Concluding that this RFC would permit Montgomery to perform work as a housekeeper, hand packer, or production assembler, the ALJ noted:

> The hypothetical proffered to the vocational expert at the hearing includes the above limitations, as well as a limitation with respect to a more open environment (versus a desolate environment). With that additional limitation, the undersigned would eliminate the job in housekeeping. The undersigned finds there are sufficient jobs in either scenario.

(Tr. 19 n.1.) Contrary to the ALJ's statement, her hypothetical to the vocational expert did not include all of the limitations contained in the RFC. While the failure

- 17 -

to include "no work as a cashier" in the hypothetical may arguably be harmless given that the expert did not testify to cashier work, I agree with Montgomery that the "no work in desolate places" was not a vocational factor on which the vocational expert could or did provide testimony given the lack of understanding ascribed to its meaning. Although the vocational expert was able to testify to work that could be performed in an "open work environment," the ALJ nevertheless included only the "no desolate places" limitation in the RFC and, as noted by the ALJ in her decision, these factors are not interchangeable.[7]

The ALJ relied on vocational expert testimony that was given in response to a hypothetical question that did not include all of Montgomery's limitations and, at the very least, did not include the limitations contained in the ALJ's written RFC assessment. Because this testimony cannot constitute substantial evidence, the ALJ erred in her reliance on it to find Montgomery not disabled. *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996).

F.   Conclusion

For the reasons stated above, this matter will be remanded to the Commissioner for further proceedings.[8]

---

[7] The ALJ acknowledges in her decision that these are two distinct limitations, *i.e.*, a more open environment "versus" a desolate environment. (Tr. 19 n.1.)

[8] Although the record suggests that the combination of Montgomery's severe impairments render her disabled, I cannot conclusively say that she is. Regardless, in this action for judicial review, Montgomery asks only that I remand the matter for further proceedings and does not seek an

Upon remand, the Commissioner shall obtain and provide the parties an opportunity to submit additional medical evidence that addresses Montgomery's ability to function in the workplace, which may include contacting Montgomery's treating mental health care providers to clarify her limitations and restrictions in order to ascertain what level of work, if any, she is able to perform. *See Coleman v. Astrue*, 498 F.3d 767 (8th Cir. 2007); *Smith v. Barnhart*, 435 F.3d 926, 930-31 (8th Cir. 2006). The ALJ is also permitted to order additional examinations and tests in order for her to make an informed decision regarding the extent to which Montgomery's impairments, both severe and non-severe, affect her ability to perform work-related activities. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985); 20 C.F.R. §§ 404.1517, 416.907. Upon receipt of any additional evidence, the ALJ shall reconsider the record as a whole, reevaluate the credibility of Montgomery's own description of her symptoms and limitations, and reassess Montgomery's RFC – including the extent to which her RFC is affected by medication side effects. *See Owen v. Astrue*, 551 F.3d 792, 802 (8th Cir. 2008). Such reassessed RFC shall be based on some medical evidence in the record and shall be accompanied by a discussion and description of how the evidence supports each RFC conclusion. *Cox v. Astrue,* 495 F.3d 614, 619 (8th Cir. 2007).

Accordingly,

---

award of benefits. The Commissioner may make this determination upon remand after proper consideration of all the evidence from a fully developed record.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 20th day of August, 2018.